v. City of Boston et al. Mr. Kendall, good morning. Good morning, members of the panel. I am Mr. Kendall on behalf of the deceased, Oswald Hickson, and the administrator, Jeanette Bunting. My client, the deceased Mr. Hickson, after he was terminated discriminatorily, filed a complaint with the MCAD. Even though under 1981 he was not required to, he filed a complaint with the MCAD. While that complaint was pending, he died. Unfortunately, his daughter, Ms. Bunting, took over the case. In fact, we filed a motion to have Ms. Bunting intervene at MCAD. That apparently was not acted on, and in fact, the MCAD petition or claim was denied. It was not clear to me why it was denied. In our papers, you will see that in our position, we asked the court, the lower court, to take judicial notice in MCAD proceedings. As you know, there was never, this was not a summary judgment disposition. This was a 12B6, at least it purports to be a 12B6 disposition. We never had oral argument. I never appeared in this court. We simply were notified that the judge had dismissed my client's case. Well, he dismissed the federal claims, split the case, and sent the state claims back to state court where they're pending. It ought to be pointed out at the outset, and I don't think the defendants would argue, that under Gaciev v. MGH, a case which we cited in our brief, I believe it's at page 20, Mr. Hickson, even though he had died, his estate retained the right to bring an action for discriminatory and retaliatory termination. In fact, Gaciev is quite clear. He was exactly on point that when one dies, the claim does not die automatically. And the court in Gaciev took pains to point out that this was a breach of contract, that when one forms a contract, an at-will contract, that the employee is not free to discriminate. The defendants in this paper's claim, and I'll deal with this later in more detail, claimed that my client didn't have a property interest in employment because he could have been fired at any time because he was an at-will employee. That's not the law. The law in Massachusetts, certainly by Gaciev, but even before Gaciev, is that an employee has a right to expect nondiscriminatory treatment, and that if the employer terminates an employee for invidious reasons, not only is the employer liable for the invidious termination, but in Gaciev's case, for refusal to rehire for invidious reasons. We submit, and it's clear from our papers, that all of the post-formation activities of the defendants fall under 1981. I know that the law court injected 1983, but 1981 is the government of our claims. We say that everything that happened to my client subsequently, certainly starting with the first drug test, which he protested, and which we allege in our complaint, the union did not properly grieve, that everything subsequent to that post-formation conduct, which is actionable under 1981, and further, that contrary to what the law court claimed, he did not have to file a claim with MCAD. The complaint, the story alleged in the complaint, says that they terminated him when they did for violating the drug and alcohol policy. Is the violation that they're referring to the one from years earlier, his refusal to take the drug test? Well, what happened is, Your Honor, as we said following the complaint, my client sometime in, I think, on about the 11th of February, if I'm not mistaken, was called into an office by Super 1. I have a specific question. On February 10, 2011, they fired him for violating the drug and alcohol policy. Do we know or do we need to know at this point when they claimed that violation occurred? On about the 11th of February, the claim was that my client refused to take a drug and alcohol test, and that constituted a positive drug test. But that was back in 2007? No, no. We're referring now to 2011. Okay, so there was a new request? Yes, there was a new request on about, I think it was the 11th of February. What happened is my client was protesting vigorously, claiming, and in fact he told the two defendants, Mr. McGonigal, who is the chief of that outfit, the Central Fleet Minutes, and his immediate supervisor, Scott Baldwin, two white males, he told them that what they were doing to him was discriminatory because white employees were doing the same thing. They were charging him with having brought his vehicle, his personal vehicle, into the garage for work. And my client said, listen, white people are doing the same thing. You're not disciplining. Why discipline me? So clearly that raises the case not only for discrimination but for retaliation because shortly thereafter, the same day, the management claimed that they sent him for a drug test when they were knowing this year that he was under the influence of any drugs or alcohol. My client said he didn't hear the request, and that was a matter that was adjudicated at the DUA, Department of Unemployment Assistance. The same two defendants, McGonigal and Arthur, testified, and that decision ended up favorably to my client. The defendant did not appeal the decision, so that's raised judicata. So there's no merit to the defendant's complaint, allegation that my client tested positive for drugs. So what you're saying here is that the basis for the termination was fabricated. Certainly, yeah. And in fact, at the hearing, the Department of Unemployment Assistance, my client, after he was wrongfully terminated, filed a claim for unemployment assistance. It was denied, he appealed it, and at the hearing, both parties, Mr. McGonigal and Mr. Arthur testified that the adverse decision was appealed to the Boston Municipal Court, which had jurisdiction of that appeal, and the Boston Municipal Court overturned that decision, which, as far as we're concerned, has raised judicata as to the issue of whether or not my client came to work under the influence of drugs or alcohol. So the defendants cannot claim in good faith that my client was under the influence of drugs or alcohol when he was fired. And we mentioned further that there was a continuing series of discriminatory acts. The 26th of February 2013, my client had applied for reinstatement. The employer told my client in writing on that day that he was not going to be rehired. So if you count three years from 2013, my client certainly was within the statute, the three-year statute, and he certainly was within the four-year statute. Further, the hearing at the DOA, I believe, took place in 2013. Could you just do the three-year and the four-year again? Well, the Massachusetts has a three-year statute of limitations. 1981 has a four-year statute of limitations. Is 1981 has a four-year only for racial harassment? Well, I'm not sure if it's only for – it also covers retaliation and the maintenance of a discriminatory workplace. Noviello v. Boston, the city of Boston, which we've cited in our brief, stands for the – But does the four-year apply to all of those or only to – To all the post-formation conduct. We say all the post-formation conduct. No, no, I'm asking a different question, which is I thought the 1981 four years – Yes. Is picked up because of the made-possible by – Post-formation conduct. Once the contract was formed, the contract of employment was formed, my client was told that the employable – Oh, I got it. Thank you. And we maintain further that the testimony – Just so I get – you don't – it doesn't have to be characterized as harassment in order for you to be able to get the benefit of the four-year. We claim racial – Any racial discrimination, post-formation – That's right. Post-formation under 1981 is actionable under the four-year statute. Further, at the hearing at the DOA, the two defendants testified. All complaints faced at the DOA hearing will bear this out. Testified pejoriously against my client. In other words, they lied when they told the hearing examiner that my client reported to work under the influence of drugs or alcohol and refused to take a drug test. You start from that date, clearly, that conduct, which they agreed to engage in to deny my client access to support, falls under the four-year – three and four-year statute of limitations because that testimony was given in 2013. So – But we're dealing with the 12B6 order. Yes. How much of what you have just said was in your complaint? Well, it's – the complaint is before the court. It's in the appendix. I understand. We set it for voluminously in our complaint. It's all these things are in your complaint. The only thing that's not in the complaint is the detail with respect to the MCAD hearing. We always – we ask the court to take judicial notice of the MCAD papers, which show quite clearly that my client complained about the wrong refusal to rehire him. The court didn't take cognizance of that. The court decided to pick and choose what parts of the MCAD record it would avert to. And we're saying that on a 12B6 motion, the court was required to accept all our well-pleaded allegations as true. What the court did, the court weighed the evidence and found against my client, which is not supposed to do on a 12B6. And on an appeal, when we appeal the final judgment, this court has the right to examine the wrongful denial of our motion to take judicial notice. Can I just ask one detail, which is with respect to the state claims? Pardon me, Your Honor? With respect to the state claims. Yes, Your Honor. Are you – never mind. I got it. I got it. Thank you. Any more questions? Thank you. Thank you, Mr. Kendall. Ms. O'Connor. Good morning. Nicole O'Connor for the City of Boston, Scott Alter, and James McGonigal. The district court's dismissal should be affirmed because essentially the federal claims break down into two components, the 1983 claims and the 1981 claims. The 1983 claim that was based on a lack of pre-termination hearing is barred by the statute of limitations. The 1983 claim based on these alleged defamatory statements that were made at the DUA hearing fails on its merits. And the 1981 claims are all based on impermissible conclusory allegations. So the 1981, you agree we have a four-year statute for 1981? Yes. And he was suspended on February 7, 2011. He was then fired three days later on February 10, 2011. Within four years of the suspension, he filed a 1981 suit saying that the suspension and the firing were in retaliation for his complaints just days earlier about disparate treatment. Why doesn't that state a claim under Section 1981? Arguably the only claims that fall within the four-year statute of limitations are the ones that Your Honor just mentioned, the retaliatory suspension and the termination. But the problem is that the complaint is completely devoid of any non-conclusive allegations as to why it was discriminatory. I'm not sure I see that. He says that the complaint says that he complained about the way vehicle assignments were being done. He then alleges the retaliatory animus, and then he alleges that within days of him making that complaint, they suspended him for a fabricated reason. What more do you need to say to at least get the show going with the complaint? For me, that's classic Iqbal. In Iqbal, we had the detainee who claimed that it was hostile, and the reasons that the government was discriminating against him were based on his national origin. And here he says, this discrimination is based on my race, but that's all he says. It was motivated by racial animus. Well, no, he says it was based on the violation of the drug policy that was unfounded and made up. He said it occurred within days of me complaining about racially disparate treatment. So those are two specific facts. But in terms of McGonigal and Alter specifically, he just says that they participated in the decision. There's nothing in the complaint about what it is that they did specifically that was racially motivated. He simply says they participated in the decision. Who in the complaint did he complain to? He alleges that he protested the written warning that he was given on February 7, 2011, to McGonigal and Alter, who were the ones that gave him the written warning. So why isn't that somewhat different than Iqbal, where the defendant was the attorney general who had never met the plaintiff? I appreciate that, Your Honor, but for me it's just much too conclusory. But on February 4, I say to McGonigal, hey, I'm being treated differently because of my race, I don't like it. And three days later, McGonigal makes the decision to fire me. I appreciate that, but just having it be temporally close in proximity three days later, the stated reason for the dismissal, according to Hickson's complaint, is that it was a violation of the drug and alcohol policy. So for me to make the jump that it was motivated by racial animus. He says that was made up. That's yet another fact that helps him. He puts that in his complaint. He says that I won on that issue. I appreciate that, Your Honor. And the best I can do is to submit that it just doesn't rise to the level of something non-conclusory. He just says it was mostly racial. And the district court didn't go through this analysis. The district court just got the statute of limitations wrong for 1981. Correct. So it never reached this issue. Well, what the district court did was dismiss the 1981 claims because it essentially compared them to the Title VII claims and found that since. The 300 days. Exactly. Exactly. Turning to the 1983 claims, the pre-termination due process violation claims that he was terminated without the opportunity for that pre-termination hearing. No doubt about it, he was terminated on February 10, 2011. So he had three years for the 1983 claim to file his complaint and didn't do so until February 2015, which is four years later. And turning to the 1983 liberty due process violation that he alleges based on these statements that were made at the Department of Unemployment Assistance, these fail on their merits. The due process right that is implicated in those types of situations, the government needs to disseminate publicly defamatory statements about you that rise to the level that they so severely stigmatize your ability to get future employment. That's what triggers your liberty interest in that case. And here there are absolutely no allegations that he wasn't able to secure employment as a result of these statements that were made two years after his termination at a hearing that was held at his request. But even if there was an allegation that he wasn't able to secure employment, it would still fail under this court's factors enunciated in the Wojcik v. Mass Lottery case, three of which are relevant here and are completely fatal to any due process liberty interest claim. First and foremost, he never requested a name-clearing hearing. The due process right is only implicated when there's a denial of your request for a name-clearing hearing. And here there's nothing in the complaint that he ever requested one. Second, there's no intentional publication on the part of the city because this was held at an unemployment benefits hearing that was requested at his request. It's a quasi-judicial proceeding two years after his termination. And the doctrine has never been read to basically define public dissemination in such a broad way so as to make it difficult for government agencies to proceed with their normal functioning of personnel operations, which is exactly what this hearing was. And lastly, there was no public dissemination in conjunction with any alteration in his employment status. Again, these statements were made two years after the termination of his employment at an unemployment benefits hearing. He had already been terminated two years prior. And just to touch briefly on the Title VII claims to the extent that they are included in his complaint, they're easily disposed of because they weren't filed with the MCAD in a timely fashion. The plaintiff just says in his complaint that all conditions precedent have been satisfied but fails to include the actual dates of his filing. And it was well within the court's discretion to consider the MCAD filings under Waters and Beepage. He filed at the MCAD on December 13, 2013, which is well beyond the 300-day statute of limitations for the conduct in 2011. He did amend his MCAD filing a year later in January 2014 to cover these alleged defamatory statements that were made at the unemployment assistance hearing. But again, those were beyond 300 days as well. If there are no further questions, I'll rest on my leave. Thank you.